**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD ANTHONY PASKOSKY,   )
     Plaintiff,   )
      )
v.   )   **Civil Action No. 13-918**
   )   **Electronically Filed**
CAROLYN W. COLVIN, ACTING   )
COMMISSIONER OF SOCIAL   )
SECURITY,   )
     Defendant.   )

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Richard Anthony Paskosky ("Paskosky") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.[1] ECF Nos. 10 & 12. For the reasons that follow, each of the pending motions will be granted in part and denied in part. The Commissioner's decision denying Paskosky's DIB claim under Title II will be affirmed.[2] The decision denying Paskosky's SSI claim under Title XVI will be vacated, and the case will be remanded for further consideration of that claim.

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Rule 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).
[2] Paskosky was only insured for Title II benefits through September 30, 2007. R. 19, 21, 41, 184. He points to no evidence which suggests that he was "disabled" on or before that date.

## II.     Procedural History

Paskosky protectively applied for DIB and SSI benefits on June 28, 2010, alleging that he had become "disabled" on July 30, 2005.[3]  R. 155, 159, 184.  Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on August 30, 2010.  R. 92, 96. Paskosky responded on October 7, 2010, by filing a timely request for an administrative hearing. R. 100.  On October 25, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") William J. Bezego.  R. 38.  Paskosky, who was represented by counsel, appeared and testified at the hearing.  R. 42-71, 86-88.  Testimony was also taken from Paskosky's mother, Patty Collins ("Collins").  R. 71-79.  Patricia J. Murphy ("Murphy"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy.  R. 80-86.  In a decision dated January 12, 2012, the ALJ determined that Paskosky was not "disabled" within the meaning of the Act.  R. 16-34.

On January 26, 2012, Paskosky sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. 14-15.  The Appeals Council denied the request for review on June 3, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case.  R. 1.  Paskosky commenced this action on June 28, 2013, seeking judicial review of the Commissioner's decision.  ECF Nos. 1-3.  Paskosky and the Commissioner filed motions for summary judgment on November 22, 2013, and December 20, 2013, respectively.  ECF Nos. 10 & 12.  Those motions are the subject of this Memorandum Opinion.

## III.     Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect

---

[3] For reasons that are not entirely clear, Paskosky listed June 1, 2000, as his alleged onset date when he applied for SSI benefits.  R. 159.  In any event, he continued to work until July 30, 2005.  R. 42.

to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42

U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).  Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the

"substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. The ALJ's Decision

In his decision, the ALJ determined that Paskosky had not engaged in substantial gainful activity subsequent to his alleged onset date. R. 21. Paskosky was found to be suffering from obsessive-compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, carpal tunnel syndrome, and a history of polysubstance abuse with continued marijuana use. R. 21. These impairments were deemed to be "severe" under the Commissioner's regulations. R. 21-23; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c),

416.920(a)(4)(ii), 416.920(c).  The ALJ concluded that Paskosky's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 23-25.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Paskosky's "residual functional capacity"[4] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant requires goal-oriented work rather than production rate pace work; requires only occasion [sic] interaction with the public, co-workers, and supervisors; and can engage in no more than frequent fine and gross manipulative tasks with the left non-dominant hand.

R. 25.  Paskosky had "past relevant work"[5] experience as a design engineer for computerized drafting.  R. 81, 189.  Murphy classified that position as a "skilled"[6] job at the "light"[7] level of exertion.  R. 81.  She testified that an individual with the limitations reflected in the ALJ's residual functional capacity assessment could not maintain a job as a design engineer.  R. 81.  Therefore, it was determined that Paskosky could not return to his past relevant work.  R. 32.

---

[4] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments."  *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a).  The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process.  20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[5] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[6] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work.  Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. §§ 404.1568(c), 416.968(c).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

Paskosky was born on July 8, 1970, making him thirty-five years old on his alleged onset date and forty-two years old on the date of the ALJ's decision. R. 33, 155, 159. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). Paskosky had more than a high school education and an ability to communicate in English. R. 33, 42, 189; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Paskosky could work as a laboratory equipment cleaner, linen room attendant or housekeeper/cleaner. R. 33-34. Murphy's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[8] R. 81-82.

## V.    Discussion

Paskosky received an associate's degree in computer-numerically-controlled programming. R. 42. He worked as a design engineer for approximately twenty years.[9] R. 189. His employment as a design engineer was terminated on July 30, 2005. R. 188. At the hearing, Paskosky attributed his discharge to the fact that it had taken him "too long" to perform his assigned duties. R. 43. He remained insured for benefits under Title II through September 30, 2007. R. 19, 41, 184.

Dr. Swamikkan Nallathambi examined Paskosky on March 26, 2009. R. 204. Paskosky complained of numbness in both hands. R. 204. Although Paskosky was "[o]riented to person, place, and time," he appeared to be "extremely anxious and figit[ing] incessantly." R. 204. It was noted that Paskosky was "using marijuana on a regular basis." R. 204. At that time, he was

---

[8] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[9] Paskosky apparently worked as a design engineer for several different employers during the twenty years immediately preceding his alleged onset date. R. 189. He testified that he had only worked for his last employer for a period of eight months. R. 42.

7

involved in a treatment program designed to end his addiction to prescribed pain medications.  R. 204.  During a follow-up examination performed one month later, Dr. Nallathambi observed that Paskosky "continue[d] to have considerable anxiety and [wa]s moving nearly constantly."  R. 203.

On June 2, 2009, Dr. Edward D. Reidy performed nerve conduction studies on Paskosky's upper extremities.  R. 250-251.  The studies revealed that Paskosky had a severe case of carpal tunnel syndrome in his left arm.  R. 248.  A moderate case of carpal tunnel syndrome was detected in his right arm.  R. 248.  Dr. Hugo James Pfaeffle surgically repaired Paskosky's left arm in July 2009.  R. 246.  Paskosky's sutures were removed on August 3, 2009.  R. 245.  At that time, Paskosky stated that he was no longer experiencing "numbness and tingling" in his left arm.  R. 245.

Paskosky protectively applied for DIB and SSI benefits on June 28, 2010.  R. 184.  He listed July 30, 2005, which was the date of his discharge from employment, as his alleged onset date.  R. 19, 155.  Dr. Douglas Schiller, a nonexamining psychological consultant, reported on August 19, 2010, that the claim record contained insufficient evidence of a mental impairment to facilitate an assessment of Paskosky's condition.  R. 214.

Dr. Patricia Jarrett, a psychiatrist affiliated with the Irene Stacy Community Mental Health Center, evaluated Paskosky on August 24, 2010.  R. 227-229.  During the evaluation, Paskosky stated that he had procured an appointment with Dr. Jarrett "mainly because" he was seeking Social Security disability benefits.  R. 227.  He described OCD symptoms dating back to his time in the eighth grade.  R. 227.  After examining Paskosky's mental status, Dr. Jarrett recorded the following observations:

> Patient is mildly disheveled.  He has fair eye contact.  What is absolutely remarkable about this individual is that he is in constant motion.  There was not

> even a matter of seconds where he was not at motor rest.  He was markedly
> restless, fidgety, in constant movement.  He is also reaching out, touching things
> on the desk, on the table, behind him, looking around the office.  His speech is
> normal volume, normal rate.  Thoughts are organized, goal directed.  There are no
> evident delusions.  Patient denies passive death wish, suicidal/homicidal ideation.
> He denies auditory and visual hallucinations.  His mood is predominantly
> anxious.  His affect has range and is congruent with his thoughts.  Judgment is
> fair.  Insight is fair.  Attention during our conversation is good.  Fund of
> knowledge is fair.  Memory for recent and remote events is generally intact based
> on history taking.  He has a normal gait.  He has markedly abnormal motor
> activity.

R. 229.  Paxil, Neurontin and Remeron were prescribed to alleviate Paskosky's symptoms.  R. 229.

On November 16, 2010, Dr. Jarrett provided Pennsylvania's Department of Public Welfare ("DPW") with written notice that Paskosky had become "temporarily disabled" thirteen days earlier.  R. 258.  She reported that this "disability" was expected to last until May 3, 2011.  R. 258.  Dr. Jarrett subsequently opined that Paskosky's "temporary disability" would last until October 6, 2011.  R. 256.

Dr. Robert L. Eisler, a psychiatrist, evaluated Paskosky on October 4, 2011.  R. 260-263.  It was determined that Paskosky was suffering from severe and chronic cases of OCD and ADHD.  R. 261.  Paskosky's abilities to follow work rules, interact with supervisors, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember and carry out instructions were deemed to be anywhere from poor to nonexistent.  R. 262-263.  In a written report discussing the findings of the evaluation, Dr. Eisler asserted that Paskosky was "quite unemployable for one year or more."  R. 261.

At the conclusion of the hearing, the ALJ informed Paskosky that a consultative psychological examination would be scheduled to evaluate his mental condition.  R. 87.  In

accordance with the ALJ's instructions, Dr. Martin Meyer examined Paskosky on December 7, 2011. R. 271-278. Dr. Meyer found Paskosky to be "very distractible." R. 272. Paskosky's "[a]bility for sustained concentration [wa]s judged to be poor." R. 273. His capacities to "gain insight" and "learn from experience" were likewise deemed to be poor. R. 274. Dr. Meyer indicated that Paskosky had "marked" limitations in his abilities to understand, remember and carry out detailed instructions, interact appropriately with members of the general public, and respond appropriately to work pressures in a usual work setting. R. 277. Paskosky was found to be "moderately" limited in his abilities to understand, remember and carry out short, simple instructions and interact appropriately with co-workers. R. 277. Only "slight" limitations were found in Paskosky's abilities to make judgments concerning simple work-related decisions, interact appropriately with supervisors, and respond appropriately to changes in a routine work setting. R. 277. Dr. Meyer described Paskosky's prognosis as "poor in terms of higher level functioning and personality integration." R. 274.

In his decision, the ALJ accorded "little weight" to the opinions expressed by Dr. Jarrett and Dr. Eisler. R. 32. The ALJ purported to accommodate the "marked" limitations described in Dr. Meyer's examination report by restricting Paskosky to "goal-oriented work rather than production rate pace work." R. 32. Paskosky challenges the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Murphy. ECF No. 11 at 13-16. In addition, Paskosky contends that the Appeals Council violated his "due process rights"[10] by declining to accept and consider evidence procured from his treating psychiatrist after the

---

[10] Paskosky does not elaborate on the source of his "due process rights." ECF No. 11 at 6-11. He does not articulate the theory underpinning his argument or rely on judicial decisions involving similar facts. *Id.* Given the vagueness of Paskosky's presentation, the Court understands his challenge to be based on the Due Process Clause of the Fifth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 323, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

rendering of the ALJ's decision. *Id.* at 6-13. The Court will address Paskosky's argument

relating to the Appeals Council's action before considering his challenge to the ALJ's decision.

### A. The Due Process Claim

The ALJ's decision was issued on January 12, 2012. R. 16-34. Paskosky apparently

sought treatment from Dr. Humphreys,[11] a psychiatrist affiliated with Glade Run Lutheran

Services ("Glade Run"), on March 20, 2012. R. 2. The treating relationship continued for at

least ten months. R. 2. On February 1, 2013, Paskosky's counsel attempted to provide the

Appeals Council with documentary evidence suggesting that Dr. Humphreys believed Paskosky

to be *per se* disabled under Listing 12.04. R. 202. The Appeals Council accepted the letter from

Paskosky's attorney and included it within the administrative record. R. 5, 202. The evidence

supplied by Dr. Humphreys was evidently excluded from the record and returned to Paskosky.

In the notice informing Paskosky that his request for review had been denied, the Appeals

Council stated as follows:

> In looking at your case, we considered the reasons you disagree with the decision
> in the material listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the
> Administrative Law Judge's decision.
>
> We also looked at medical evidence dated March 20, 2012 through January 28,
> 2013 from Glade Run Lutheran Services. The Administrative Law Judge decided
> your case through January 12, 2012. This new information is about a later time.
> Therefore, it does not affect the decision about whether you were disabled
> beginning on or before January 12, 2012.
>
> If you want us to consider whether you were disabled after January 12, 2012, you
> need to apply again. We are returning the evidence to you to use in your new
> claims.

---

[11] Paskosky's filings do not disclose Dr. Humphreys' first name. R. 202; ECF No. 11 at 6-13.

R. 1-2.  The "medical evidence" from Glade Run does not appear in the record of this case.

Paskosky maintains that the Appeals Council violated his "due process rights" by refusing to

accept that evidence and preventing it from being reviewed by the Court.  ECF No. 11 at 6-13.

The statutory provision authorizing the commencement of this action permits an

unsuccessful claimant to seek judicial review of "any final decision of the Commissioner of

Social Security made after a hearing to which he [or she] was a party."  42 U.S.C. § 405(g).  This

language clearly limits judicial review to a "final decision" of the Commissioner.  *Califano v.*

*Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).  When the Appeals Council

denies a claimant's request for review, the administrative law judge's decision becomes the

Commissioner's "final decision" in that case.  *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct.

2080, 147 L.Ed.2d 80 (2000).  A federal court has no jurisdiction to entertain a challenge to a

decision by the Appeals Council denying a claimant's request for review.[12]  *Matthews v. Apfel*,

239 F.3d 589, 594 (3d Cir. 2001).  Under ordinary circumstances, the Court would not have

jurisdiction to entertain Paskosky's challenge to the Appeals Council's refusal to accept and

consider the additional medical evidence from Glade Run.  *Bacon v. Sullivan*, 969 F.2d 1517,

1519-1521 (3d Cir. 1992).

The instant case is different because Paskosky's challenge to the Appeals Council's

action appears to arise under the Due Process Clause of the Fifth Amendment, which provides

that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[13]

U.S. CONST., AMEND. V.  The plain language of 42 U.S.C. § 405(h) provides that the

---

[12] "The dismissal of a request for Appeals Council review is binding and not subject to further review."  20 C.F.R. §§ 404.972, 416.1472.

[13] The Due Process Clause of the Fourteenth Amendment limits the prerogatives of state actors.  U.S. CONST., AMEND. XIV, § 1.  Paskosky's challenge arises under the Fifth Amendment because it relates to the actions of federal officials involved in the implementation of a federal statute.  *B&G Construction Co., Inc. v. Director, Office of Workers' Compensation Programs*, 662 F.3d 233, 246, n. 14 (3d Cir. 2011).

Commissioner's findings and decisions cannot be reviewed in an action commenced under 28 U.S.C. § 1331. Therefore, the Act clearly "precludes resort to federal-question jurisdiction for the adjudication of [Paskosky's] constitutional contentions." *Weinberger v. Salfi*, 422 U.S. 749, 761, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). When constitutional questions are at issue, "the availability of judicial review is presumed," and a statutory scheme will not be construed to foreclose jurisdiction unless Congress' intent to do so is clearly manifested. *Sanders*, 430 U.S. at 109. Since Paskosky's challenge arises under the Constitution and cannot be brought under § 1331, the Court has jurisdiction to consider it within the context of this case. *Mathews v. Eldridge*, 424 U.S. 319, 326-332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The fourth sentence of 42 U.S.C. § 405(g) provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Since any judgment entered must be based "upon the pleadings and transcript of the record," extrinsic evidence cannot be considered for the purpose of sentence-four review. *Matthews*, 239 F.3d at 593-594. Any disposition ordered under sentence four terminates the claimant's civil action against the Commissioner, irrespective of whether the case is remanded for further proceedings. *Shalala v. Schaefer*, 509 U.S. 292, 299, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

The sixth sentence of § 405(g) permits a reviewing court to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). When a remand is ordered under sentence six, the reviewing court "does not rule in any way as to the correctness of the

administrative determination." *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). A sentence-six remand does not terminate the civil action, since the Commissioner must proceed to determine whether "additional and modified findings of fact" should be filed with the court after reviewing the "new evidence." 42 U.S.C. § 405(g).

The Commissioner's regulations permit a claimant to submit "new and material evidence" to the Appeals Council in support of his or her request for review. 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council is required to "consider the additional evidence only where it relates to the period on or before the date of the administrative law judge['s] hearing decision." *Id.* The regulations further provide that "the Appeals Council will return the additional evidence" to the claimant if that evidence "does not relate to the period" of time falling between his or her alleged onset date and the date of the challenged decision. 20 C.F.R. §§ 404.976(b), 416.1476(b). The Appeals Council's decision to reject the evidence from Glade Run was consistent with the Commissioner's regulations. R. 2. Paskosky's contention that the Appeals Council violated his due process rights by following the regulations amounts to an assertion that the regulations are unconstitutional. ECF No. 11 at 6-11. This argument, however, is premised on an incorrect understanding of the Act and the regulations.

When a request for review is granted, the Appeals Council can "issue[] its own decision" as to whether the claimant is disabled based on "the preponderance of the evidence." 20 C.F.R. §§ 404.979, 416.1479. Any "new and material evidence" submitted by the claimant and accepted by the Appeals Council must be considered for that purpose. 20 C.F.R. §§ 404.976(b), 416.1476(b). The decision rendered by the Appeals Council becomes the Commissioner's "final decision" in the claimant's case. *Sims*, 530 U.S. at 106-107. In that scenario, judicial review of the Commissioner's decision must account for the entire administrative record, including the

"new and material evidence" first presented to the Appeals Council. *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993); *Eads v. Secretary of the Dept. of Health & Human Services*, 983 F.2d 815, 816-817 (7th Cir. 1993).

As discussed earlier, the administrative law judge's decision becomes the "final decision" of the Commissioner whenever the Appeals Council denies a claimant's request for review. *Sims*, 530 U.S. at 106-107. In that event, any "new and material evidence" *accepted* by the Appeals Council remains "a part of the administrative record" that must be included with the Commissioner's answer to a complaint filed in a subsequent civil action seeking judicial review. *Eads*, 983 F.2d at 817; 42 U.S.C. § 405(g). Most federal Courts of Appeals have concluded that a reviewing court can consider the entire administrative record, including the evidence that was never presented to the administrative law judge, in determining whether the Commissioner's "final decision" is supported by substantial evidence. *Brewes v. Commissioner of Social Security Administration*, 682 F.3d 1157, 1163 (9th Cir. 2012); *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262-1267 (11th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 336-337 (5th Cir. 2005); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992); *Wilkins v. Secretary, Dept. of Health & Human Services*, 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*). Courts adhering to that view generally limit the category of evidence justifying a sentence-six remand to "new and material evidence" first presented to the *reviewing court*, since their review under sentence four already accounts for the evidence accepted by the Appeals Council prior to the denial of the claimant's request for review. *Ingram*, 496 F.3d at 1267-1269.

A minority of federal Courts of Appeals have held that sentence-four review must be limited to the evidence presented to the administrative law judge in any case in which the

Appeals Council has denied the claimant's request for review, since the administrative law judge's decision constitutes the "final decision" under review. *Mills v. Apfel*, 244 F.3d 1, 4-5 (1st Cir. 2001); *Cotton*, 2 F.3d at 695-696; *Eads*, 983 F.2d at 816-817. The United States Court of Appeals for the Third Circuit adopted the minority rule in *Matthews v. Apfel*, 239 F.3d 589, 592-595 (3d Cir. 2001), thereby limiting consideration of "new and material evidence" accepted by the Appeals Council prior to the denial of a claimant's request for review to the propriety of a remand under sentence six. In this case, the Appeals Council denied Paskosky's request for review and declined to substitute its own decision for that of the ALJ. R. 1. Given the holding in *Matthews*, the evidence from Glade Run could not have been considered for the purpose of this Court's sentence-four review even if it had been accepted by the Appeals Council and made a part of the administrative record. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011). That evidence could have been considered solely for the purpose of determining whether Paskosky was entitled to a sentence-six remand. *Matthews*, 239 F.3d at 593.

Paskosky argues that the Appeals Council violated his due process rights by refusing to accept the evidence from Glade Run and preventing the Court from considering that evidence. ECF No. 11 at 10-11. His argument is based on the mistaken belief that the Court cannot consider evidence extrinsic to the administrative record in determining whether a sentence-six remand is warranted. The disagreement among federal Courts of Appeals relates only to whether a certain category of evidence already included within the administrative record (*i.e.*, "new and material evidence" submitted to the Appeals Council prior to the denial of the claimant's request for review) should be considered under sentence four or sentence six. *Ingram*, 496 F.3d at 1267-1269 (holding that such evidence could be considered solely for the purpose of sentence-four

review); *Matthews*, 239 F.3d at 592-595 (holding that such evidence could be considered solely for the purpose of sentence-six review). Neither the majority rule nor the minority rule precludes a plaintiff from presenting "new and material evidence" to a reviewing court for the purpose of procuring a sentence-six remand. It is axiomatic that a plaintiff seeking a remand under sentence six can rely on evidence that is not included within the administrative record filed with the Commissioner's answer. *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)(explaining that a sentence-six remand is "appropriate when *the district court* learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding")(emphasis added); *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)(remarking that a plaintiff seeking a sentence-six remand "must demonstrate good cause for not having incorporated the new evidence *into the administrative record*")(emphasis added).

If Paskosky believes that the evidence rejected by the Appeals Council would have entitled him to a sentence-six remand in this case, he should have presented that evidence to this Court in support of his motion for summary judgment. His failure to do so is attributable to his own misunderstanding of the law rather than to any action taken by the Appeals Council. The Court has no occasion to consider whether it would be constitutional for Congress or the Commissioner to prevent a claimant such as Paskosky from presenting evidence of the kind supplied by Glade Run in support of a request for a sentence-six remand. Since the applicable statutory provisions and regulations left Paskosky free to submit that evidence to the Court, it is obvious that he was not unconstitutionally deprived of any right secured to him under the Due Process Clause. Paskosky's misapprehension of the law cannot provide him with a ground for relief in this case.

**B.    The ALJ's Residual Functional Capacity Assessment**

Paskosky challenges the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Murphy.  ECF No. 11 at 13-15.  A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations.  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation.  *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).  In this case, every functional limitation adopted in the ALJ's decision was conveyed to Murphy at the hearing.  R. 25, 81-82.  Under these circumstances, the argument advanced by Paskosky amounts to a direct attack on the underlying residual functional capacity assessment rather than a challenge to the probative value of Murphy's testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

In determining Paskosky's residual functional capacity, the ALJ purported to accommodate the "marked" limitations described in Dr. Meyer's examination report by restricting Paskosky to "goal-oriented work rather than production rate pace work."  R. 32.  The ALJ accorded "little weight" to the assessments provided by Dr. Jarrett and Dr. Eisler.  R. 32.  Opinions expressed by treating and examining physicians do not necessarily bind the Commissioner on the issue of a claimant's residual functional capacity.  *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011).  When presented with conflicting medical assessments, an administrative law judge "is free to choose the medical opinion of one doctor over that of another."  *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009).

Consequently, it was permissible for the ALJ to credit Dr. Meyer's opinion over those of Dr. Jarrett and Dr. Eisler. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Based on the findings of his examination, Dr. Meyer concluded that Paskosky had "marked" limitations in his abilities to understand, remember and carry out detailed instructions, interact appropriately with members of the general public, and respond appropriately to work pressures in a usual work setting. R. 277. Dr. Meyer's consultative examination was performed after the administrative hearing. R. 87, 271-278. The residual functional capacity assessment ultimately adopted by the ALJ mirrored his earlier hypothetical questions to Murphy. R. 25, 81-82. That assessment, however, did not necessarily reflect Dr. Meyer's examination findings. It is not entirely clear whether the restriction limiting Paskosky to "goal-oriented work" adequately accounted for the "marked" limitations in his abilities to understand, remember and carry out detailed instructions. R. 25, 277. Furthermore, the existing record does not inevitably support the ALJ's conclusion that Paskosky's difficulties in dealing with work-related stress were sufficiently accommodated by the preclusion of work performed at a production-rate pace. R. 25, 277. Dr. Meyer found Paskosky to be "very distractible." R. 272. According to Dr. Meyer, Paskosky had taken an extended amount of time to complete a written application. R. 272. Murphy responded in the negative when asked whether jobs existed in the national economy for an individual who needed to remain "off task" for fifteen percent of a standard workday. R. 82. In response to a series of questions posed by Paskosky's counsel, Murphy testified that an individual would need to complete his or her assigned tasks within a reasonable amount of time in order to maintain a job as a laboratory equipment cleaner, linen room attendant or housekeeper/cleaner. R. 82-85. Since Dr. Jarrett, Dr. Eisler and Dr. Meyer all provided assessments suggesting that Paskosky was incapable of performing the full range of work

encompassed by the ALJ's residual functional capacity finding, that finding is not supported by substantial evidence with respect to the period of time covered by those assessments. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

### C.     The Title II Claim

A claimant must be insured for benefits in order to obtain an award under Title II. 42 U.S.C. § 423(a)(1)(A). Paskosky was insured for Title II benefits through September 30, 2007. R. 19, 21, 41, 184. The earliest records of his medical impairments date back to March 2009. R. 204. He did not seek mental health treatment until 2010. R. 24, 26, 227-229. Throughout his decision, the ALJ repeatedly observed that Paskosky had not presented evidence of potentially disabling impairments during the insured period. R. 21-22, 24, 26-27, 31-32. As the claimant seeking benefits, Paskosky was in the best position to provide information about his own medical history. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Evidence postdating the expiration of a claimant's insured status may shed light on his or her condition during the insured period. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1380-1383 (Fed.Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004). Dr. Meyer's report suggests that Paskosky's symptoms may have manifested themselves as early as 1998. R. 272. Nevertheless, it is undisputed that Paskosky continued to work until July 30, 2005. R. 42. Dr. Jarrett opined that Paskosky had become "disabled" on November 3, 2010, which was more than two months *after* her first encounter with him. R, 227-229, 258. The reports prepared by Dr. Eisler and Dr. Meyer were based on examinations performed subsequent to that date. R. 260-263, 271-278. The record is totally devoid of evidence suggesting that Paskosky was "disabled" at any time prior to the expiration of his insured status. Given the lapse of time between the expiration of Paskosky's eligibility for Title II benefits and the opinions

expressed by Dr. Jarrett, Dr. Eisler and Dr. Meyer, the ALJ's residual functional capacity assessment is supported by substantial evidence with respect to the period of time relevant to Paskosky's DIB claim. *Mays v. Barnhart*, 78 Fed.Appx. 808, 813 (3d Cir. 2003)(unpublished).

### D.     The Title XVI Claim

The expiration of a claimant's insured status does not affect his or her eligibility for SSI benefits under Title XVI. *Bowen v. Galbreath*, 485 U.S. 74, 76, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988). Because Dr. Meyer's examination report was not available at the time of the hearing, Paskosky's counsel was not afforded an opportunity to ask Murphy whether the functional limitations described therein would have precluded an individual from maintaining a full-time job existing in significant numbers in the national economy. For this reason, the Court cannot conclude as a matter of law that the ALJ's failure to account for the "marked" limitations identified by Dr. Meyer was harmless. *Rutherford*, 399 F.3d at 553 (explaining that a reviewing court need not order a remand to correct an error that "would not affect the outcome of the case"). Since the record is not yet developed with respect to this dispositive issue, the case will be remanded to the Commissioner for further consideration of Paskosky's SSI claim. *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010).

Further, Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement this statutory mandate. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result of

drug or alcohol abuse would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). If a claimant's disability would cease in the absence of continued drug or alcohol consumption, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). When the independent effects of a claimant's impairments cannot be separated from the effects of his or her continued substance abuse, an award of benefits is proper. *Salazar v. Barnhart*, 468 F.3d 615, 622-626 (10th Cir. 2006).

The impact of a claimant's substance abuse does not become relevant unless or until it is determined that he or she is otherwise "disabled." *Brueggemann v. Barnhart*, 348 F.3d 689, 694-695 (8th Cir. 2003). Since no finding of "disability" was made in this case, the ALJ had no occasion to consider whether whether Paskosky's continued use of marijuana was adversely affecting his ability to work. In the event that Paskosky is found to be "disabled" on remand, the Commissioner will need to consider whether an award of SSI benefits is precluded by the CWAAA.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's motion for summary judgment (*ECF No. 12*) will be denied with respect to Paskosky's SSI claim and granted with respect to his DIB claim. Paskosky's motion for summary judgment (*ECF No. 10*) will be denied as to his DIB claim. With respect to the SSI claim, Paskosky's motion for summary judgment will be denied to the extent that it requests an award of benefits but granted insofar as it seeks a vacation of the Commissioner's decision, and a remand for further proceedings. The Commissioner's decision

denying Paskosky's DIB claim under Title II will be affirmed. The decision denying Paskosky's SSI claim will be vacated, and the case will be remanded to the Commissioner for further consideration of that claim.[14] An appropriate order will follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties

---

[14]The Commissioner must "reopen and fully develop the record" before determining whether Paskosky is "disabled" within the meaning of the Act. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800 (3d Cir. 2010). Paskosky can submit the documentary evidence from Glade Run in support of his SSI claim. *Reefer v. Barnhart*, 326 F.3d 376, 381 (3d Cir. 2003).